744 P.2d 10

**STATE of Arizona, Appellee,**

v.

**Gregory Alan GRIFFIN, Appellant.**

**No. CR–86–0346–PR.**

Supreme Court of Arizona,
En Banc.

Oct. 1, 1987.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender, by Regula Case and Frank P. Leto, Deputy Pima County Public Defenders, Tucson, for appellant.

HOLOHAN, Justice.

The defendant, Gregory Alan Griffin, was convicted of attempted second degree murder and aggravated assault, with specific jury findings that both offenses were of a dangerous nature pursuant to A.R.S. § 13–604. The trial court sentenced defendant to aggravated concurrent terms of 21 years for attempted second degree murder and 15 years for aggravated assault. A.R.S. §§ 13–1001(C)(1), 13–1204(A)(1) and (B). On appeal defendant did not contest

the assault conviction and sentence, nor the conviction for attempted second degree murder. Defendant challenged his attempted second degree murder sentence, asserting that his term of 21 years constituted cruel and unusual punishment in violation of the Eighth Amendment. Defendant claimed such a penalty is disproportionate to Arizona's maximum sentence of 20 calendar years for completed second degree murder. A.R.S. § 13–710. The Court of Appeals held that any part of defendant's sentence for attempted second degree murder which exceeds the maximum 20 years for second degree murder is unconstitutional, and remanded for resentencing to a term less than 20 years. *State v. Griffin*, 154 Ariz. 481, 744 P.2d 8 (App. 1986).

The state and the defendant filed petitions for review, and we granted both petitions.

The question presented for review by the state is whether the defendant's sentence satisfies the standards of Due Process. The defendant's petition for review raises the question whether the superior court may modify the defendant's sentence by reducing it to a term of years less than the 20 years maximum for second degree murder.

I

In 1984, the Arizona legislature amended A.R.S. § 13–1104(B) and reclassified second degree murder from a class 2 felony to class 1. At the same time, A.R.S. § 13–710 was enacted, setting the punishment for second degree murder at 15 years, aggravated or mitigated by up to five years. *See* A.R.S. §§ 13–702(D) and (E). With the change in the classification of second degree murder, attempted second degree murder became a class 2 felony. A.R.S. § 13–1001(C)(1). As such, the penalty for a first offense is a presumptive term of 10.5 years, a mitigated term of 7 years and an aggravated term of 21 years. Hence, the result of the legislature's action was a 20-year maximum sentence for second degree murder, but there was a possible 21-year term for attempted second degree murder.

II

This mathematical one-year difference in the sentencing schemes gives an initial impression of credence to the basis of defendant's appeal. He contends that his sentence fails the proportionality test set forth in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In holding that a criminal sentence must be proportionate to the crime for which the defendant has been convicted, the United States Supreme Court adopted a four-part test to be applied. Reviewing courts must look at: (1) the gravity of the offense; (2) the harshness of the penalty; (3) the sentences imposed on other criminals in the same jurisdiction; and (4) the sentences imposed for the commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. at 292, 103 S.Ct. at 3010–11, 77 L.Ed.2d at 650. In the present case defendant argues, and the Court of Appeals agreed, that the sentencing schemes for second degree murder and attempted second degree murder failed the third prong of the test. The appellate court concluded that in effect, an accused can be, and in this case was, sentenced more severely where the victim survives than if the murder attempt had been successful.

However, what the defendant has failed to realize is that the difference in the two sentencing schemes is not based solely on the one-year distinction in their respective maximum terms. A careful analysis of the differences between the maximum sentences under the two statutes demonstrates that the second degree murder statute carries a heavier penalty than that for attempted second degree murder.

As to the harshness of the penalty, the defendant was sentenced to 21 years pursuant to A.R.S. § 13–604(G). Inherent in that penalty are the possibilities of commutation of sentence, pardon, parole, and earned release credits. *See* A.R.S. §§ 13–604(G), 41–1604.07. Therefore, the defendant's term of imprisonment could be modified by one or more of these statutory provisions.

In contrast to the sentence for attempted second degree murder under A.R.S. § 13–710, the presumptive sentence for second degree murder is 15 calendar years, mitigated or aggravated by up to five years. *See* A.R.S. §§ 13–702(D) and (E). Hence the maximum sentence for second degree murder is 20 calendar years. "Calendar year" means three hundred sixty-five days actual time served without release, suspension or commutation of sentence, probation, pardon or parole, work furlough or release from confinement on any other basis. A.R.S. § 13–105(3); *State v. Rodriguez*, 153 Ariz. 182, 735 P.2d 792 (1987). Consequently, a defendant sentenced to 20 years for second degree murder is faced with the harsh reality that he *will* serve every day of his sentence. Unlike one convicted for attempted second degree murder, he has no hope of parole, commutation or any other possible reduction of his sentence.

The effect which parole and possible commutation of sentence have in a proportionality review under an Eighth Amendment challenge was addressed in *Solem*. In that case the defendant (Helm) was convicted of uttering a "no account check" for $100, punishable as a first offense by a maximum of five years' imprisonment and a $5,000 fine. Helm, however, had six prior felony convictions. Therefore he was subject to South Dakota's recidivist statute and received a life sentence without possibility of parole. His only chance of ever leaving the penitentiary was if the governor commuted his sentence. In holding that the possibility of commutation, *without the prospect of parole*, did not save the defendant's otherwise unconstitutional sentence, the Court stated that "[t]he possibility of commutation is nothing more than a hope for 'an ad hoc exercise of clemency'." 463 U.S. at 303, 100 S.Ct. at 3016, 77 L.Ed.2d at 657.

Three years before the *Solem* decision, the Court examined the effect of parole upon an Eighth Amendment proportionality review in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). There the defendant (Rummel) was convicted of obtaining $120.75 by false pretenses, a felony. Because he had two prior felony

convictions, Rummel received a mandatory life sentence under Texas' recidivist statute. However, unlike the situation in *Solem*, Texas historically had allowed a prisoner serving a life sentence to become eligible for parole in as little as 12 years. Although this was not the sole reason why the sentence did not constitute cruel and unusual punishment, the Court realized that parole eligibility must be considered. The Court stated:

We agree with Rummel that his inability to enforce any 'right' to parole precludes us from treating his life sentence as if it were equivalent to a sentence of 12 years. Nevertheless, because parole is 'an established variation on imprisonment of convicted criminals,' *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972), a proper assessment of Texas' treatment of Rummel could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life.

445 U.S. at 280–81, 100 S.Ct. at 1142–43, 63 L.Ed.2d at 395.

Pardon and commutation are, of course, mere possibilities; and their existence is of little weight in the *Solem* analysis. Parole, however, is an important consideration in determining the actual prison time to be served under any sentence which is parole eligible. Pursuant to A.R.S. § 41–1604.-06(D) the defendant is eligible for parole after serving two-thirds of the sentence imposed by the court, which would be 14 years in the defendant's case.

The defendant points out that the state has not furnished us with any statistical data to support the frequency of parole being granted. This could be a significant problem if the defense had in any way indicated that the grants of parole are the exception rather than the usual.

In addition to parole we have noted that the defendant can earn an earlier release from confinement by another method. Under A.R.S. § 41–1604.07 defendant is entitled to obtain "earned release credits." As long as he (or any other prisoner similarly sentenced for attempted second degree murder) complies with all prison rules and

486

regulations and maintains good work performance, every three days he serves results in an earned release credit of one day. The release credits are added to the time served by a prisoner until they equal the sentence imposed by the court. A.R.S. § 41–1604.07(D). The Director of the Department of Corrections may release a prisoner whose time served plus release credits equal the sentence imposed by the court. *Id.* Consequently, based on his own conduct while in prison, it is possible for the defendant to be released from confinement after serving approximately 16 years of his 21–year sentence.

Conversely, there is no avenue available to a convicted second degree murderer for earlier release. The sentence imposed (20 years) must be served in full.

### III

In light of current statutory provisions which provide for parole and early release from a sentence, judicial consideration of the proportionality of sentences for different crimes does not end with mere facially mathematical disparities. All relevant statutory factors which affect confinement must be considered. Having considered those factors, we conclude that the punishment for attempted second degree murder under A.R.S. § 13–1001(C)(1) is not greater than that for second degree murder under A.R.S. § 13–710. Hence, the defendant's sentence in this case does not violate the Eighth Amendment's ban on cruel and unusual punishments.

Our resolution of the issue presented in the state's petition for review makes it unnecessary for us to answer the question presented in the defendant's petition for review.

The decision of the Court of Appeals is vacated; the sentence of the superior court is affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.